# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

### DOCKET NO. 3:08-cv-00092-FDW

| | | |
|---|---|---|
| **GITA SPORTS LTD.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| **SG SENSORTECHNIK GmbH & CO. KG,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

THIS MATTER comes now before the Court upon Defendant's Motion to Dismiss for Improper Venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure (Doc. No. 2). Plaintiff has responded, Defendant has replied, the Court has heard oral argument, and this matter is now ripe for review. For the reasons stated below, Defendant's Motion is GRANTED IN PART in that Plaintiff's causes of action for breach of contract, unfair and deceptive trade practices, fraud, and conversion are DISMISSED, but DENIED IN PART in that Plaintiff's causes of action for open account and account stated are REMANDED to the Superior Court of Mecklenburg County, North Carolina.

## FACTUAL BACKGROUND

Plaintiff is a North Carolina corporation involved in the wholesale sales of racing bicycles and related equipment. Defendant is a German corporation doing business in North Carolina and is the manufacturer of Ergomo, a mobile performance measuring instrument. Pursuant to a written agreement between the parties, the Sales Exclusive Supply Agreement ("Agreement"), Plaintiff

became the exclusive distributor of Ergomo Pro, Ergomo Spin, Ergomo parts and accessories, and any future Ergomo products within the United States and Canada.  The parties entered into the Agreement on December 5, 2005; it took retroactive effect on November 1, 2005, and was to expire on December 31, 2008.  According to Plaintiff's Complaint, 21% of Defendant's products were returned for service and repairs during the 2006-2007 fiscal year.  The rate of services and repairs for the current fiscal year is 31%.  Under the Agreement, Defendant was to replace faulty products within thirty (30) days of being notified that they were faulty.  Defendant has allegedly failed to meet its obligations to repair its faulty products.  On November 7, 2007, Plaintiff received a termination notice from Defendant for not meeting the minimum purchase amount required.  In December of 2007, Defendant made certain statements that allegedly have been harmful to Plaintiff's reputation.  In addition, Defendant allegedly has been selling Ergomo products through other North American distributors, despite the fact that the original term for the exclusive distributorship has not yet expired.

More important to the instant motion are the following clauses from the Agreement: "(1) The place of fulfillment and court of venue is Mörfelden-Walldor[;] (2) The laws of the Federal Republic of Germany are solely applicable to this exclusive supply agreement."  The Agreement, including these forum-selection and choice-of-law clauses, was written in English.

### PROCEDURAL BACKGROUND

Based on the foregoing facts, Plaintiff brought suit in the Superior Court of Mecklenburg County on December 21, 2007.  Plaintiff raised six causes of action for breach of contract and

various tortious conduct relating to Defendant's performance under the contract.[1]  Plaintiff has also

asked for punitive damages, alleging that Defendant's conduct has been willful, wanton or malicious,

or in reckless disregard of Plaintiff's rights.

On March 7, 2008, Defendant removed the case to this Court based on diversity of

citizenship.  On March 14, 2008, Defendant moved to dismiss pursuant to Rule 12(b)(3) of the

Federal Rules of Civil Procedure, relying on a forum-selection clause designating the proper venue

as Mörfelden-Walldorf, Germany.

## LEGAL STANDARD

Despite much confusion in this field of the law,[2] the United States Court of Appeals for the

Fourth Circuit has held that "a motion to dismiss based on a forum-selection clause should be

properly treated under Rule 12(b)(3) as a motion to dismiss on the basis of improper venue."

Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, Inc., 471 F.3d 544 (4th Cir. 2006).  Thus, a case

may be dismissed for improper venue under Rule 12(b)(3) based on a forum-selection clause.

Indeed, if the Court accepts Defendant's arguments, this case must be dismissed as the Court lacks

jurisdiction to transfer a case to the courts of a foreign nation.  See Allen v. Lloyd's of London, 94

F.3d 923 (4th Cir. 1996) (dismissing the case after holding that the forum-selection clause

designating the United Kingdom was both mandatory and valid).

---

[1]Specifically, Plaintiff claims (1) unfair or deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1, (2) conversion, (3) fraud, (4) breach of contract, (5) open account, and (6) account stated.

[2]See 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3803.1 (3d ed. 2008) ("Courts dismiss these actions under Section 1406 of Title 28, the common-law doctrine of forum non conveniens, Rule 12(b)(1), Rule 12(b)(3), and Rule 12(b)(6).  Some courts dismiss these actions without specifying a particular rule or statute.") (citations omitted).

**ANALYSIS**

The parties have vigorously argued and briefed the following issues: (1) whether the forum-selection clause is mandatory or permissive; and (2) if mandatory, whether the forum-selection clause is valid. The second inquiry is more complex than it first appears, in that the parties have suggested three alternative bases for determining validity: (a) the <u>Bremen</u>, <u>Carnival Cruise</u>, and <u>Stewart</u> line of Supreme Court cases and their progeny; (b) North Carolina law; or (c) German law, be it (i) domestic German law or (ii) European Community law. These issues will be addressed in turn.

**A. Mandatory or Permissive**

A forum-selection clause can be either mandatory—providing the designated forum with exclusive jurisdiction over any disputes—or permissive—providing the designated forum with jurisdiction over the parties, but not necessarily exclusive jurisdiction. <u>See</u> <u>Scotland Memorial Hosp., Inc. v. Integrated Informatics, Inc.</u>, No. 1:02-cv-796, 2003 WL 151852, at *3-4 (M.D.N.C. Jan. 8, 2003) (<u>citing</u> <u>S & D Coffee, Inc. v. GEI Autowrappers</u>, 995 F. Supp. 607, 609 (M.D.N.C.1997)). As a general rule, a forum-selection clause "will not be enforced as a mandatory selection clause without some further language that indicates the parties' intent to make jurisdiction exclusive." <u>Id.</u> at *4. A crucial distinction between a mandatory clause and a permissive clause "is whether the clause only mentions jurisdiction or specifically refers to venue." <u>Id.</u>

In <u>Scotland Memorial</u>, the forum-selection clause stated, "venue will be the courts in Atlanta, Georgia." <u>Id.</u> The court noted, "Although language such as 'exclusive' or 'sole' is not used, the specific reference to the venue indicates mandatory language. . . . [T]he language of the contract deals with an exact venue and indicates specific intent." <u>Id.</u> Based on this reference to a specific

venue, the court concluded that the forum-selection clause was mandatory. Similarly, the court in

Lawler v. Schumacher Filters America, Inc., 832 F. Supp. 1044 (E.D. Va. 1993) held that a forum-

selection clause was mandatory because it specifically stated that "venue is in the courts of

Crailsheim, Germany." Id. at 1048.

In this case, the forum-selection clause states, "The place of fulfillment and court of venue

is Mörfelden-Walldor." Just as in Scotland Memorial and Lawler, the parties have clearly and

specifically designated a forum, Mörfelden-Walldor, Germany, as the court of venue. The clause

does not say that the parties consent to jurisdiction in Mörfelden-Walldor, but rather that Mörfelden-

Walldor *is* the court of venue.[3] The Court will not construe this clause to be anything other than

what it plainly is: a forum-selection clause that specifically states the exclusive court of venue. The

clause is, therefore, mandatory, and must be enforced if it is valid.

## B. Validity

A mandatory forum-selection clause designating an international forum must result in

dismissal of the case if the clause is valid. The parties have briefed three possible standards under

which validity may be determined.

---

[3]Plaintiff's expert, Professor Ralf Michaels of Duke University School of Law, suggests that the Agreement has been translated from a German form contract and that in Germany this standard clause regulates the place of fulfillment, or in other words gives jurisdiction—the function of a permissive clause—rather than providing for an exclusive venue. (Michaels Expert Op. at 2-3, Doc. No. 13-3.) The Court, however, finds Defendant's expert more persuasive on this point. Professor Peter Hay of Emory University School of Law is the senior author of Hay et al., Conflict of Laws: Cases and Materials (12th ed. 2004) and Hay et al., Conflict of Laws (treatise, 4th ed. 2004). According to Professor Hay, there are separate and distinct meanings to the phrases "place of fulfillment" and "court of venue." (Hay Expert Op. at 4-5, Doc. No. 18-6.) While "place of fulfillment" might be a permissive, jurisdiction conferring phrase, the addition of the second phrase, "court of venue," makes sense only when viewed as providing for something in addition to jurisdictional consent: exclusive venue in a specific court. (Id. at 5.)

**1. Federal or State Law**

In the seminal case of M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972), the Supreme

Court took a situation in which "[f]orum-selection clauses have historically not been favored by

American courts," id. at 9, and replaced it with one in which "such clauses are prima facie valid and

should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under

the circumstances," id. at 10. The Court applied the same reasoning to a forum-selection clause in

a form contract between a cruise line and individual consumers in Carnival Cruise Lines, Inc. v.

Shute, 499 U.S. 585 (1991). The Court added that the clause must be "reasonable" and pass "judicial

scrutiny for fundamental fairness." Id. at 595. The United States Court of Appeals for the Fourth

Circuit has summarized the test for reasonableness thusly:

> Choice of forum and law provisions may be found unreasonable if (1) their formation
> was induced by fraud or overreaching; (2) the complaining party "will for all
> practical purposes be deprived of his day in court" because of the grave
> inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of
> the chosen law may deprive the plaintiff of a remedy; or (4) their enforcement would
> contravene a strong public policy of the forum state.

Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. 1996) (quoting Bremen, 407 U.S. at 18).

Because Bremen dealt with federal question jurisdiction, there was some confusion as to whether

the same analysis would apply in a case involving diversity of citizenship. The Supreme Court

answered this question affirmatively in Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22

(1988). However, the Court in Stewart based its ruling on an interpretation of 28 U.S.C. § 1404(a)

and the jurisprudential axiom that "a district court sitting in diversity must apply a federal statute

that controls the issue before the court and that represents a valid exercise of Congress' constitutional

powers." Id. at 27. This reasoning in Stewart, tied to the application of a federal statute, left open

the issue of which law to apply when there was no guiding federal statute, such as when a motion is made to dismiss pursuant to Rule 12(b)(3).  Lower courts have struggled with this question, and there has been no definitive word from the Fourth Circuit.

Plaintiff urges the Court to follow the Fourth Circuit's unpublished opinion in Nutter v. New Rents, Inc., No. 90-2493, 1991 WL 193490 (4th Cir. Oct. 1, 1991).  In Nutter, the Fourth Circuit concluded that because there was no "federal statute containing its own standards for determining whether an action should be transferred or dismissed," the district court "correctly determined that the enforceability of the forum selection clause was a matter of state law."  Id. at *6.  Nutter, as an unpublished opinion, is not binding on this Court, but it would be highly persuasive if the Court believed that it represented the Fourth Circuit's current position on this issue.  The District of Maryland has applied Nutter on at least two occasions for the proposition that "[i]n diversity cases . . . the Fourth Circuit applies state law to determine enforceability."  Eisaman v. Cinema Grill Systems, Inc., 87 F. Supp. 2d 446, 448 (D. Md. 1999) (applying Georgia law to determine validity); see also Koch v. America Online, Inc., 139 F. Supp. 2d 690 (D. Md. 2000) ("In [diversity] cases, the Fourth Circuit applies the relevant state law.").  However, the Middle District of North Carolina and the Eastern District of Virginia have not applied Nutter.  See Bassett Seamless Guttering, Inc. v. GutterGuard, LLC, No. 1:05-cv-184, 2006 WL 156874, at*4 n.4 (M.D.N.C. Jan. 20, 2006) ("Although the majority of courts apply federal law to determine the validity of forum-selection clauses, two Fourth Circuit opinions [Nutter and an opinion that pre-dated Stewart] suggest that the law of the forum state may control. . . . [However,]  the court will follow the approach adopted by the majority of the circuits and apply federal law."); Lawler v. Schumacher Filters America, Inc., 832 F. Supp. 1044, 1053 (E.D. Va. 1993) (upholding the use of a Bremen/Carnival framework to dismiss

a case based on a forum-selection clause).  In addition, the majority of circuits—all those to address

the issue except the Third Circuit—have accepted the proposition that federal law ought to apply.

See ADT Sec. Services, Inc. v. Apex Alarm, LLC, 430 F. Supp. 2d 1199, 1201-04 (D. Colo. 2006)

(discussing the majority view among the circuits and holding that "the Supreme Court's rationale

will apply with equal force to procedural questions arising under Rule 12(b)(3) and similar

provisions; where Congress has authored a statute or authorized a Rule on point, federal law

controls").  The Court finds the reasoning of the cases applying federal law to be persuasive and is

of the opinion that Nutter, given its unpublished nature and pronouncement before other circuits had

ruled on the issue, is not controlling.

Accordingly, the Court will apply the federal standard from the Bremen, Carnival Cruise, and

Stewart line of cases as embodied by Allen's four-factor test.  If an analysis of Allen's factors results

in a determination that the forum-selection clause is valid, this case must be dismissed.

**(i)  Fraud or Overreaching**

There are no allegations that the forum-selection clause was the result of fraud or

overreaching.  Indeed, both parties are sophisticated business entities dealing in arms-length,

international transactions.

**(ii) Grave Inconvenience; Day in Court**

Plaintiff has asked the Court to consider five factors of the eleven-part analysis in Rice v.

Bellsouth Advertising & Pub. Corp., 240 F. Supp. 2d 526 (W.D.N.C. 2002).  However, the very fact

that Plaintiff has focused on less than half of the Rice factors persuades the Court that those factors

are not necessary to the disposition of this case.  See Bassett, 2006 WL 156874, at *6 n.7 ("This

court is not convinced that such a lengthy analysis is always necessary or relevant, particularly when

. . . transfer is not an option. Moreover, several of the eleven factors . . . are redundant or ill-suited to the present analysis.") (citations omitted). Plaintiff's argument has two main points, that the procedural differences of German courts and the extreme expense of litigating in Germany would operate to deprive Plaintiff of its day in court.

Both Plaintiff's and Defendant's experts agree that there are several procedural differences between United States district courts and German courts, including differences in discovery, witness presentation, and the general presentation of evidence. (Michaels Expert Op. at 7-9, Doc. No. 13-3; Hay Expert Op. at 10-13, Doc. No. 18-6.) Regarding Germany's procedural differences, the Court agrees with the many courts who have ruled that "Germany has a civilized legal system [and that] [n]one of the circumstances mentioned by the plaintiff . . . indicate that plaintiff could not maintain an action in Germany." Mackley v. Gruner & Jahr A.G. & Co., No. 93-civ-6521, 1995 WL 417069, at *1 (S.D.N.Y. July 13, 1995); see also Borden, Inc. v. Meiji Milk Products Co., Ltd., 919 F.2d 822, 829 (2d Cir. 1990) ("[S]ome inconvenience or the unavailability of beneficial litigation procedures similar to those available in the federal district courts does not render an alternative forum inadequate."); Kirch v. Liberty Media Corp., No. 04-civ-667, 2006 WL 3247363, at *6 (S.D.N.Y. Nov. 8, 2006) ("[C]ourts have frequently found Germany to be an adequate alternative forum, despite the differences in pleading and discovery procedures."); Bonzel v. Pfizer, Inc., No. 04-1401, 2004 WL 2475564, at *9 (D. Minn. Nov. 2, 2004) (holding that despite discovery limitations, filing fees, and translation fees, "courts have repeatedly found Germany to be an adequate forum"); cf. Society of Lloyd's v. Ashenden, 233 F.3d 473, 477 (7th Cir. 2000) (observing that England, a nation with a "civilized legal system," is not "open to serious question" regarding its "adherence to the rule of law and commitment to the norm of due process," unlike nations such as "Cuba, North Korea,

Iran, Iraq, [or] Congo"). Despite the procedural differences of the German courts—differences that are inevitable in any legal system that is not our own—the Court is in accord with the other courts who have considered this issue in concluding that Germany has a fair and civilized legal system.

Similarly, courts are in agreement that the expense of litigation is insufficient to invalidate a forum-selection clause, especially in a diversity case. See Brock v. Entre Computer Centers, Inc., 933 F.2d 1253, 1258 (4th Cir. 1991) ("No matter which forum is selected, one side or the other will be burdened with bringing themselves and their witnesses from far away."); Price v. Leasecomm Corp., No. 1:03-cv-685, 2004 WL 727028, at *4 (M.D.N.C. March 31, 2004) ("[A] party seeking to avoid a forum selection clause must prove more than the inconvenience of litigating in a distant forum."); AC Controls Co., Inc. v. Pomeroy Computer Resources, Inc., 284 F. Supp. 2d 357, 361-62 (W.D.N.C. 2003) ("[I]n a diversity case, whichever forum is ultimately selected will inevitably burden 'one side or the other' by requiring them to 'bring themselves and their witnesses from another state.'") (quoting Republic Mortg. Ins. Co. v. Brightware, Inc., 35 F. Supp. 2d 482, 487 (M.D.N.C. 1999)). This is true not only because one side or the other will necessarily be burdened, but also because the parties presumably included that burden when they calculated the proper consideration to be paid under the contract. See Paper Exp., Ltd. v. Pfankuch Maschinen GmbH, 972 F.2d 753, 758 (7th Cir. 1992) ("[Plaintiff] argues that the forum-selection clause is unreasonable and unenforceable because as a practical matter it would be inconvenient and costly to litigate in Germany. . . . [A]dditional expense does not necessarily invalidate a forum-selection clause since [plaintiff] was presumably compensated for this burden by way of the consideration it received under the contract."); Lawler v. Schumacher Filters America, Inc., 832 F. Supp. 1044, 1053 (E.D. Va. 1993) ("[Plaintiff] has stated that the expense of transporting witnesses to Germany and housing

them there for some indeterminate period of time would be too costly for him to bear. . . . [However, t]he contract itself presumably compensated [plaintiff] for his expenses, both those known and those which could reasonably have been anticipated."); cf. Gordonsville Industries, Inc. v. American Artos Corp., 549 F. Supp. 200, 205 (W.D. Va. 1982) ("Mere inconveniences or additional expense is not the test of unreasonableness since it is assumed [that defendant] received consideration for these things under the contract.")  Thus, Plaintiff's contention that it would be inconvenient or costly to transport witnesses and litigate in Germany is insufficient to demonstrate unreasonableness.  It would be just as costly and inconvenient for Defendant to litigate in this Court; even more so, in fact, because Defendant would be deprived of the benefit that it presumably bargained and paid for under the Agreement.

### (iii) Fundamental Unfairness

Plaintiff contends that certain remedies available in this Court would be unavailable in a German court.  For example, Plaintiff observes that neither treble damages under N.C. Gen. Stat. § 75-16 nor punitive damages are available in Germany.  This argument, however, must fail for the same reason that the previous argument failed.  German law is certainly different from North Carolina law, but that does not mean that Plaintiff will be deprived of "*a* remedy," Allen, 94 F.3d at 928 (emphasis added), even if it is not the same remedy that North Carolina law would afford. Nor do the inevitable legal differences between the different systems mean that German law is fundamentally unfair.  Indeed, just as courts have held that a German forum does not deprive a party of its day in court, they have held that German law is fair.  See Gordonsville Industries, Inc. v. American Artos Corp., 549 F. Supp. 200, 205 (W.D. Va. 1982) ("This court is not persuaded that the law to be applied by the [German courts] would be unfair."); see also Fagan v. Deutsche

Bundesbank, 438 F. Supp. 2d 376, 383 (S.D.N.Y. 2006) ("The differences between the U.S. and German court systems highlighted by [plaintiff] are insufficient to eliminate Germany as an adequate alternative forum."); NCA Holding Corp. v. Norddeutsche Landesbank Girozentrale, No. 96-civ-9321, 1999 WL 39539, at *2 (S.D.N.Y. 1999) ("That the German legal system is different than that of the United States does not render Germany an inadequate forum."). Accordingly, the Court is of the opinion that a German court applying German law would not be fundamentally unfair to Plaintiff's case.

### (iv) Strong Public Policy of Forum State

North Carolina has a well recognized and strong public policy against forum-selection clauses. N.C. Gen Stat. § 22B-3 provides that "any provision in a contract entered into in North Carolina that requires the prosecution of any action . . . that arises from the contract to be instituted or heard in another state is against public policy and is void and unenforceable." See also Dove Air, Inc. v. Bennett, 226 F. Supp. 2d 771, 775-76 (W.D.N.C. 2002) ("[I]f the [contract] was entered into in North Carolina, this statute would apply to void the forum selection provision."). Defendant has two arguments for the inapplicability of § 22B-3. First, Defendant argues that § 22B-3 refers to another "state," not to foreign nations, and that it is therefore inapplicable in an international context. Second, Defendant argues that under German law contract formation was completed in Germany, not North Carolina, and that North Carolina's public policy is therefore irrelevant. The Court, however, believes the final disposition of these issues to be unnecessary. The Allen factors do not represent an elemental test, with the satisfaction of each element being a necessary condition. Rather, the factors are just that: factors meant to inform the Court as to the clause's reasonableness. Having already determined that the first of the Allen factors is inapplicable and the other two favor

enforcement of the clause, the fourth factor is not dispositive.  In <u>Allen</u> itself, the Fourth Circuit enforced the forum-selection clause even though it violated the applicable public policy.  <u>Allen</u>, 94 F.3d at 928.  Complete reliance on the public policy of the forum, when the other factors favor enforcement, is "misplaced."  <u>Rice</u>, 240 F. Supp. 2d at 528.  The Court therefore declines to address Defendant's arguments.  Even assuming the applicability of North Carolina's strong public policy, the balance of the <u>Allen</u> factors favors enforcement of the clause.

Having determined that there was no fraud or overreaching in this case, that Plaintiff will not be gravely inconvenienced or denied its day in court, and that Germany as a forum and German law are not fundamentally unfair, the Court holds that the forum-selection clause is valid notwithstanding North Carolina's strong public policy against forum-selection clauses.

## 2. The <u>Klaxon</u> Principle

The Court has already determined that federal law applies to the determination of validity and that under federal law the forum-selection clause is valid.  Nevertheless, the outcome would be the same under an application of North Carolina law.  Under the long-standing <u>Klaxon</u> principle, a federal court sitting in diversity must apply the substantive law of the forum state, including its choice-of-law rules.  <u>Colgan Air, Inc. v. Raytheon Aircraft Co.</u>, 507 F.3d 270, 275 (4th Cir. 2007) (citing <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496-97 (1941)).[4]  Because the predominant factor of the Agreement is the sale of goods—the Ergomo and its related products[5]—the

---

[4]It was the application of the <u>Klaxon</u> principle in <u>Nutter</u> that led the court to the application of West Virginia's conflicts principles, which in turn led to the application of Louisiana law as per the forum-selection clause.  <u>Nutter</u>, 1991 WL 193490, at *5-6.

[5]It is widely accepted that a distributor contract, although it involves a mix of goods and services, is predominantly a contract for the sale of goods.  <u>See, e.g.</u>, <u>AKA Distributing Co. v. Whirlpool Corp.</u>, 137 F.3d 1083, 1085 (8th Cir. 1998) ("Applying [the predominant factor] test,

choice-of-law rule that applies is N.C. Gen. Stat. § 25-1-301. That section provides that "when a transaction bears a reasonable relation to this State and also to another state or nation the parties may agree that the law either of this State or of such other state or nation shall govern their rights and duties." The transaction in this case clearly bears a reasonable relation to Germany; much of the contract formation took place in Germany, Defendant is a resident of Germany, and much of the contract performance was to take place in Germany. Thus, the parties were within the ambit of § 25-1-301 when they agreed that "[t]he laws of the Federal Republic of Germany" shall govern their rights and duties. In addition, North Carolina courts interpret forum-selection clauses on the basis of the law applicable to the contract as a whole. Szymczyk v. Signs Now Corp., 606 S.E.2d 728, 733-34 (N.C. App. 2005). Thus, even if Nutter was controlling and a state law analysis applied, North Carolina's conflicts principles would lead to the application of German law.

As Professor Hay has stated in his expert report, interpretation and application of the forum-selection clause would be governed by the law that a German court would apply to this case: European Community ("EC") law. (Hay Expert Op. at 3-5, Doc. No. 18-6.) Because Defendant is an EC party and the case is international in nature, EC law governs the Agreement. (Id.) According to Professor Hay, the forum-selection clause is mandatory because EC law provides that when "the parties, one or more of whom are domiciled in a Member State, have agreed that a court of the courts of a Member State are to have jurisdiction to settle any disputes . . . that court shall have jurisdiction." (Id. at 4 (quoting Brussels-I Regulation Art. 23(1).) This rule is applicable "even if the plaintiff is domiciled in a non-member country." (Id.) Professor Michaels does not address the

---

most courts have concluded that contracts for the distribution of goods are governed by [UCC] Article 2."); Echo, Inc. v. Whitson Co., Inc., 121 F.3d 1099, 1102 (7th Cir. 1997); Kirby v. Chrysler Corp., 554 F. Supp. 743, 748-50 (D. Md. 1982).

application of EC law, but rather concludes that the forum-selection clause is not mandatory under domestic German law. (Michaels Expert Op. at 4-7, Doc. No. 13-3.) Professor Michaels's analysis, however, is largely based upon his focus on the "place of fulfilment" language, which the Court has already found unpersuasive. The Court is persuaded by the expert report of Professor Hay that the forum-selection clause is mandatory under either EC law or domestic German law.

Furthermore, Professor Hay demonstrates that the forum-selection clause is valid under EC law. That law's only requirement that is relevant to this case— that the agreement be in writing—is satisfied by the Agreement. (Id. at 7-8.) Thus, the forum-selection clause is both mandatory and valid under either the application of federal law or North Carolina's conflicts principles, which lead to the application of German law.

## C. Tort Claims

Finally, Plaintiff contends that in the event the Court dismisses its breach of contract claim, the Court should nevertheless remand Plaintiff's tort claims to state court. In Strum v. Exxon Co., 15 F.3d 327 (4th Cir. 1994), the Fourth Circuit recognized North Carolina's adoption of the "independent tort" doctrine. As the Fourth Circuit emphasized, "The distinction between tort and contract possesses more than mere theoretical significance. Parties contract partly to minimize their future risks. Importing tort law principles of punishment into contract undermines their ability to do so." Id. at 330. Under the independent tort doctrine, "a plaintiff must allege a duty owed him by defendant which is separate and distinct from any duty owed under a contract." Lowe's Cos. v. Pacific Research Group, Inc., No. 5:05-cv-275, 2007 WL 1040481, at *1-2 (W.D.N.C. Mar. 29, 2007). Plaintiff's allegations of unfair and deceptive trade practices and fraud show, at most, that Defendant "did not carry out its promise, not that [it] never had any intention of doing so." Strum,

15 F.3d at 331. Similarly, Plaintiff's allegation of conversion is directly related to Defendant's contractual duty to repair and replace faulty products. It is, therefore, more properly part of Plaintiff's breach of contract case. Accordingly, it would be inappropriate for this Court to retain jurisdiction over Plaintiff's claims of unfair and deceptive trade practices, fraud, and conversion. Cf. Lawler, 832 F. Supp. at 1052 ("All of plaintiff's claims stem from the same operative facts. We decline the invitation to sever the non-contract counts from the two sounding in contract.").

The Court does, however, agree with Plaintiff that the claims of open account and account stated, while related to the Agreement, are sufficiently independent from it to allow them to proceed. Specifically, the Court notes the allegation that "Defendant charged to the account airfare tickets for flights taken," (Compl. ¶ 27, Doc. No. 1), flights that were seemingly unrelated to the Agreement. However, these two claims are insufficient to satisfy the $75,000 threshold for diversity jurisdiction. They are, therefore, REMANDED to the Superior Court of Mecklenburg County, North Carolina.[6]

### CONCLUSION

The Court believes that the application of the Bremen, Carnival Cruise, and Stewart line of Supreme Court cases is appropriate to the determination of Defendant's Motion to Dismiss for

---

[6]Upon remand, the Superior Court may not exercise jurisdiction over the dismissed claims, but only over the claims of open account and account stated. "It has long been established that the judgments of the federal courts are to be accorded full faith and credit when a question of their recognition arises in a state court or in another federal court." Restatement (Second) of Judgements § 87 cmt. a (West 2008). This principle of law has been repeatedly recognized by the United States Supreme Court. See, e.g., Dupasseur v. Rochereau, 88 U.S. (21 Wall.) 130, 134 (1874); Embry v. Palmer, 107 U.S. 3, 9 (1883); Metcalf v. Watertown, 153 U.S. 671 (1894); Stoll v. Gottlieb, 305 U.S. 165, 167 (1938); see also Matter of Cook, 49 F.3d 263, 266 (7th Cir. 1995) ("Although 28 U.S.C. § 1738, which implements the Full Faith and Credit Clause of the Constitution for federal litigation, does not in terms apply to the states, the Supreme Court of the United States has long assumed that state tribunals must give federal judgments the same force that federal courts give them.").

Improper Venue. Thus, the Court declines to apply the unpublished decision of Nutter v. New Rents.

After applying the Allen test for reasonableness, the Court holds that (1) neither the Agreement nor the forum-selection clause were the result of fraud or overreaching, (2) Plaintiff will not be gravely inconvenienced or deprived of its day in court if required to litigate this case in Germany, (3) German law is not fundamentally unfair, and (4) North Carolina's strong public policy in N.C. Gen. Stat. § 22B-3 is insufficient to overcome the other factors. In the alternative, the Court concludes, based on the expert report of Professor Peter Hay, that the application of either EC law or domestic German law would lead to the same result.

The Court concludes with the overarching principle espoused by the United States Supreme Court in Bremen:

> Manifestly much uncertainty and possibly great inconvenience to both parties could arise if a suit could be maintained in any jurisdiction . . . . The elimination of all such uncertainties by agreeing in advance on a forum acceptable to both parties is an indispensable element in international trade, commerce, and contracting.

M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 13-14 (1972).

Accordingly, Defendant's Motion to Dismiss for Improper Venue is GRANTED IN PART and DENIED IN PART. Plaintiff's causes    Signed: June 23, 2008                                    re

trade practices, fraud, and conversion are DI∫                                                                            ıt

and account stated are REMANDED to the S                                                                                  a.

     IT IS SO ORDERED.

Frank D. Whitney
United States District Judge

-17-